**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WALKER DIGITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 13-98-GMS |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| PAYNEARME, INC., 7-ELEVEN, INC. and | ) | |
| AMAZON.COM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

*Of counsel:*

J. David Hadden
Carolyn Chang
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500

*Counsel for PayNearMe, Inc.
and 7-Eleven, Inc.*

Eliza V. Bechtold
Klaus H. Hamm
Salumeh R. Loesch
Jeffery S. Love
Kristen L. Reichenbach
Todd M. Siegel
Carla Todenhagen
Philip Warrick
Garth A. Winn
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
Telephone:  (503) 595-5300

*Counsel for Amazon.com, Inc.*

Dated: March 11, 2013
1097857 / 39907

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendants PayNearMe, Inc.,
7-Eleven, Inc., and Amazon.com, Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................ 2

    A.    The '582 Patent Specification............................................................................. 2

    B.    The '582 Patent Claims ...................................................................................... 4

III.  LEGAL STANDARD ............................................................................................... 6

IV.  ARGUMENT ........................................................................................................... 7

    A.    The '582 Patent Claims Are Not Patent Eligible Under the "Machine-or-Transformation" Test ........................................................................................... 9

         1.    The '582 Patent Claims Do Not Effect Any Transformation .................. 9

         2.    The '582 Patent Claims Are Not Tied to Any Machine ....................... 10

    B.    The '582 Patent Claims Are Directed to an Unpatentable Abstract Idea .......... 12

         1.    The '582 Patent Claims Do Not Contain Any Limitations Restricting Them to a Patent-Eligible Application of an Abstract Idea ..................................................................................................... 12

         2.    The Inclusion of Conventional Steps that May Tie the Claims to the Physical World Is Insufficient to Render the Claims Patent Eligible ................................................................................................ 14

         3.    Reciting Use of a Conventional Computer Does Not Make an Abstract Idea Patentable ..................................................................... 16

V.   CONCLUSION ...................................................................................................... 17

## TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*Bancorp Servs., LLC v. Sun Life Assur. Co.*,
    687 F.3d 1266 (Fed. Cir. 2012)...................................................................*passim*

*Bilski v. Kappos*,
    561 U.S. __, 130 S. Ct. 3218 (2010) ....................................................... 1, 6, 7, 8

*CyberFone Sys., LLC v. Cellco Partnership*,
    C.A. No. 11-827-SLR, 2012 U.S. Dist. LEXIS 115740
    (D. Del. Aug. 16, 2012)............................................................................7, 10

*Cybersource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)...................................................................*passim*

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012)............................................................. 2, 8, 9, 16

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980) ......................................................................................8

*Fort Props., Inc. v. American Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012)...................................................................8, 15

*Funk Bros. Seed Co. v. Kalo Inoculant Co.*,
    333 U.S. 127 (1948) ....................................................................................12

*Glory Licensing LLC v. Toys "R" Us, Inc.*,
    No. 09-4252, 2011 U.S. Dist. LEXIS 51888 (D.N.J. May 16, 2011) ...............6, 12

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ......................................................................................8

*In re Schrader*,
    22 F.3d 290 (Fed. Cir. 1994) ........................................................................15

*Mayo v. Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S.Ct. 1289 (2012) .................................................................................*passim*

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    No. C-12-1233, 2012 U.S. Dist. LEXIS 129396 (N.D. Cal. Sept. 11, 2012)...............6, 7, 11

*Parker v. Flook*,
    437 U.S. 584 (1978) ......................................................................................8

## **TABLE OF AUTHORITIES**
**(continued)**

**CASES**                                                                                              **PAGE**

*Sinclair-Allison, Inc. v. Fifth Avenue Physician Services, LLC*,
    No. 12-cv-360, 2012 WL 6629561 (W.D. Okla. Dec. 19, 2012) .............................................6

**STATUTES & RULES**

35 U.S.C. § 101.................................................................................................................. 6, 7, 10

Fed. R. Civ. P. 12(b)(6)............................................................................................................6

## I.   __INTRODUCTION__

In this lawsuit, plaintiff Walker Digital attempts to state a claim for patent infringement by asserting exclusive ownership over the entire concept of paying for a remote purchase at a local retail store.  No such infringement claim can exist, however, because no such patent can exist.  The Supreme Court has repeatedly made clear that abstract ideas are not patent eligible. *Mayo v. Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) ("Phenomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work.  And monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it.") (citations omitted); *Bilski v. Kappos*, 561 U.S. __, 130 S. Ct. 3218, 3225 (2010) (recognizing that "laws of nature, physical phenomena, and abstract ideas" are three exceptions to patent eligibility consistent with 150 years of precedent and the notion that a patentable process must be "new and useful").

Yet, an abstract idea is all that Walker Digital's patent recites.  The claim limitations recite nothing more than a customer purchasing goods from a remote seller, a customer paying for the goods at a separate local retail store, and in some instances, the remote seller shipping the goods once the customer makes payment.  *See e.g.*, '582 patent, claim 25.  Nothing in any of the independent or dependent claims restricts the patent to a specific patent-eligible application of this abstract concept.  *Mayo*, 132 S. Ct. at 1294, 1297 (explaining that a patent-eligible application of an abstract idea must "contain other elements or a combination of elements, sometimes referred to as an 'inventive concept'" so as to "do significantly more than just describe" the abstract idea).

The inclusion of apparatus and computer readable medium claims that make mere reference to a "processor," "memory," or "computer-readable program code" is not enough to

render the claims patent-eligible.  *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (finding claims patent-ineligible where they were "silent as to how a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the performance of the method"); *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011) ("the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium").  Nor is the addition of routine and conventional steps enough.  *Mayo*, 132 S.Ct. at 1300 ("simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable").

At its core, Walker Digital's patent seeks to monopolize the abstract concept of local payment for remote purchases without restriction to any specific application, device, or methodology.  Armed only with this unpatentable concept, Walker Digital cannot state a claim for patent infringement.  Accordingly, Walker Digital's complaint should be dismissed in its entirety for failure to state a claim.

## II.   STATEMENT OF FACTS

Walker Digital's complaint against defendants PayNearMe, 7-Eleven, and Amazon.com includes a single count alleging direct infringement of U.S. Patent No. 6,381,582.  *See* Complaint (D.I. 1) ¶¶ 16-20.

### A.   The '582 Patent Specification

The '582 patent, entitled "Method and System for Processing Payments for Remotely Purchased Goods," was intended to "offer the convenience of home shopping available through the use of catalogs, and the further convenience of flexible payment options at favored retail stores."  '582 patent at col. 3:52-55.  Directed to the "local processing of payments for remotely

purchased goods[,]" the patent explains that the term "local" refers to "a location operating a POS [point-of-sale] system and deemed convenient by the customer . . . to visit for purposes of submitting a payment." *Id.* at cols. 1:6-9 and 6:23-26. "In contrast, the term 'remote' is used to describe a seller separate from the local POS system … and from which the customer makes a purchase without a physical visit to a premises." *Id.* at col. 6:26-29.

The specification discloses an embodiment which enables "a customer operating buyer system 22 to make a remote purchase from remote seller system 12, and to subsequently pay for that remote purchase through a local retailer operating local POS system 14." *Id.* at col. 5:55-58; *see also* Fig. 1. The process begins with a customer initiating a purchase with a remote seller through "the Internet, a telephone call to a live operator, or a telephone call to an interactive voice response unit (IVRU) operated by remote seller system 12." *Id.* at cols. 9:65-10:4. The patent acknowledges that "[m]any other conventional systems are known for order taking, including telephone and paper systems." *Id.* at col. 10:19-21. The remote seller provides the customer with information identifying the purchase and purchase price and transmits a record of the order to the local retailer. *Id.* at col. 10:21-24 and col. 10:51-54.

To pay for the purchase at a local POS retailer, the customer communicates the order information "either verbally or in paper format (i.e., written or printed barcode format)" and the retailer queries the POS system to retrieve a price. *Id.* at col. 11:45-57. The customer can then submit payment to the local POS system. *Id.* at col. 12:59-67 ("[T]he customer may submit cash, a check, a credit card, or other payment account indicator, a payment towards a layaway account, or any payment type acceptable at the local store.").

In describing this process, the patent states that a "significant feature of the present invention is seen to include in local POS system 14 appropriate data for processing scanned

barcodes (or other appropriately entered codes, such as typed in product SKU's) to identify both locally sold goods and remote sellers (catalog merchants in the illustrated embodiment)." *Id.* at cols. 6:64-7:2. The patent does not, however, disclose or require any specialized or unique code or data for identifying the remote purchase. *See id.* at col. 10:57-62 ("customer may select to print Internet page … particularly if these pages include barcodes"); col. 11:21-23 ("customer submits either the catalog itself or the printed barcode"); col. 11:27-30 ("customer may submit a code provided by the catalog merchant, or even just the name of the catalog merchant"); col. 11:46-49 (order code is "communicated to the register operator verbally or in paper format (i.e. written or printed barcode format).")). The patent, furthermore, makes clear that this feature is part of conventional and commercially available systems. *Id.* at col. 5:46-48 ("Local POS system 14 with POS terminals 26A-*n* comprises a conventional, commercially available POS processing system."); col. 6:14-17 ("Through conventionally known apparatus (not shown), local POS system 14 is connected to operate with POS terminals 26A-*n* and remote processor system 16."); col. 7:21-23 ("Through conventionally known apparatus (not shown), remote processor system 16 is connected to operate with local POS system 14 and remote seller system 12."); col. 11:56-57 ("Such methods for encoding and decoding information are well known in the art.").

Thus, the patent concludes by stating that "[w]hile the invention has been described with respect to paying for catalog orders at local retail stores, it will be obvious that it has much broader application, being useful wherever it is convenient and desirable for a customer to make a local payment for a remote purchase." *Id.* at col. 13:41-44; *see also id.* at col. 13:44-47 ("While the present invention has been described with respect to specific embodiments, those skilled in the art will recognize that it has broad application, and is not thus limited.").

B.   **The '582 Patent Claims**

Indeed, the claims of the '582 patent confirm the unbounded breadth of the patent. The

independent method claims recite the broad concept of paying for remote purchases at a local

retailer from each of three perspectives:  (1) the point-of-sale retailer (claims 1 and 8); (2) the

remote seller (claim 25); and (3) the customer (claim 41).  In its complaint, Walker Digital only

specifically alleges infringement of claim 25, drafted from the perspective of the remote seller.

Complaint ¶ 18.  In any event, none of the method claims are limited by any specific

implementation.  Claims 8, 25, and 41 are representative:[1]

> 8.  A method for processing a payment for a purchase of goods, comprising the steps of:
>   receiving at a point-of-sale system a code relating to a purchase of goods;
>   determining if said code relates to a local order or to a remote order from a remote seller;
>   if said code relates to a remote order, then
>   determining a price for said remote order;
>   receiving a payment for said remote order; and
>   transmitting to said remote seller data indicating that said payment has been received for said remote order.
>
> 25.  A method for a remote seller to process a payment for the sale of goods, comprising the steps of:
>   receiving a remote order for a purchase of goods from a customer;
>   generating a code and a purchase price for said remote order;
>   transmitting said code and said purchase price to the customer;
>   providing order data for use by a point-of-sale system of a local seller in receiving a payment for said remote order;
>   receiving payment data confirming said payment has been received at said point-of-sale system of said local seller;
>   initiating, responsive to said payment data, a shipment of said goods; and
>   receiving a payment for said remote order from said local seller.
>
> 41.  A method submitting a payment for a purchase of goods, comprising the steps of:
>   transmitting an order for goods to a remote merchant;
>   receiving a code and a purchase price for said order from said remote merchant;
>   providing at least one of said code and said purchase price for use by a point-

---

[1] While the specific language of the independent method claims do differ depending on whether the claims are drafted from perspective of the remote seller, the local retailer, or the customer (*e.g.*, "receiving" an order versus "transmitting" an order), none of the differences are relevant to discussion regarding the scope of the claims as they all relate to the same process of paying for a remote purchase of goods at a local retailer.

of-sale system of a local seller in processing a payment for said order;
submitting said payment to said local seller at said point-of-sale system; and
receiving said goods from said remote seller.

The '582 patent also includes a set of apparatus, means-plus-function, and computer readable medium claims corresponding to the method claims. *See e.g. id.* at claims 44 and 69 (corresponding to method claim 1); claims 46, 70, and 72 (corresponding to method claim 8), and claims 57, 71 and 73 (corresponding to method claim 25). While these claims recite "a processor," "a memory," "instructions" or "program code," they do not impose any meaningful limitations on the general process of paying for remote purchases at a local point-of-sale location. *Id.* Similarly, none of the dependent claims put any restrictions on the general concept of paying for remote purchases at a local point-of-sale retailer.

## III.    **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Whether an asserted patent is invalid under 35 U.S.C. § 101 for claiming unpatentable subject matter is a question of law that can and should be addressed at the pleading stage. *See Sinclair-Allison, Inc. v. Fifth Avenue Physician Services, LLC*, No. 12-cv-360, 2012 WL 6629561, *5 (W.D. Okla. Dec. 19, 2012) (granting a motion to dismiss pursuant to 12(b)(6) because the business method patent was an unpatentable abstract idea); *OIP Techs., Inc. v. Amazon.com, Inc.,* No. C-12-1233, 2012 U.S. Dist. LEXIS 129396, *1 (N.D. Cal. Sept. 11, 2012) (granting motion to dismiss pursuant to 12(b)(6) based on patent ineligibility under § 101 after finding it proper to consider said motion at the pleading stage); *Glory Licensing LLC v. Toys "R" Us, Inc.*, No. 09-4252, 2011 U.S. Dist. LEXIS 51888, *4, 18 (D.N.J. May 16, 2011) (finding patent ineligible under § 101 on a 12(b)(6) motion). Resolution of the case on a motion to dismiss is particularly appropriate here, where no claim construction is needed to decide the § 101 issue. *See Bancorp Servs., LLC v. Sun Life*

*Assur. Co*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("we perceive no flaw with the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101"); *see also CyberFone Sys., LLC v. Cellco Partnership*, C.A. No. 11-827-SLR, 2012 U.S. Dist. LEXIS 115740, *11-12 (D. Del. Aug. 16, 2012) (deciding § 101 issue before claim construction where plaintiff failed to explain how claim construction would alter the § 101 analysis); *OIP*, 2012 U.S. Dist. LEXIS 129396 at *14-16 (rejecting argument that motion to dismiss on § 101 grounds was premature because the court had not yet engaged in claim construction).

There are three long-recognized judicially created exceptions to § 101 patent-eligibility. Laws of nature, physical phenomena, and abstract ideas cannot be patented. *Bilski*, 130 S. Ct. at 3225; *Mayo*, 132 S. Ct. at 1301. In determining whether a patent falls within one of these exceptions, courts have often used the "machine-or-transformation test," a test that the Supreme Court has recently confirmed as an "important and useful clue" to patent eligibility. *Bilski*, 130 S. Ct. at 3227 ("[T]he machine-or-transformation test is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101."). Under the "machine-or-transformation" test, a claimed invention is patent eligible if "(1) it is tied to a particular machine or apparatus, or (2) if it transforms a particular article into a different state or thing." *Id.* at 3224.

The "machine-or-transformation" test is not, however, dispositive. *Id.* at 3226. "Beyond the machine-or-transformation test, a court is obligated to hew closely to established precedents in this area to determine whether an invention falls within of the exceptions to § 101's broad eligibility." *OIP*, 2012 U.S. Dist. LEXIS 129396 at *10-11.

## IV.  <u>ARGUMENT</u>

Recent and long-standing precedent regarding patent-eligible subject matter under § 101 repeatedly prohibits the patenting of general principles. The Supreme Court has denied patent

protection to claims that would wholly preempt the use of abstract concepts that should be "free to all men and reserved exclusively to none." *Mayo*, 132 S. Ct. at 1293, *quoting Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980); *see also Bilski*, 130 S. Ct. at 3229-31 (finding unpatentable a method that merely set forth the concept of hedging risk in buying and selling commodities as it would preempt use of this approach in all fields); *Parker v. Flook*, 437 U.S. 584, 589-90 (1978) (finding that a mathematical formula enabling the monitoring of conditions during a catalytic conversion process was unpatentable despite being limited to use in petrochemical and oil-refining industries); *Gottschalk v. Benson*, 409 U.S. 63, 64-67, 71-72 (1972) (denying patent protection for a method of programming computers to convert binary-coded decimal numerals into pure binary code because it was directed to an abstract formula for solving a mathematical problem).

Following these cases, the Federal Circuit has similarly denied patent protection for inventions directed to general concepts such as administering and tracking the value of life insurance policies (*see Bancorp*, 687 F.3d at 1270-71, 1278), facilitating property owners' exchange of property without incurring tax liability (*see Fort Props., Inc. v. American Master Lease LLC*, 671 F.3d 1317,1318-20 (Fed. Cir. 2012)), receiving and transmitting credit data between auto dealers and lenders (*see Dealertrack*, 674 F.3d at 1317, 1334 (Fed. Cir. 2012), and monitoring credit card transactions to detect fraud (*see Cybersource*, 654 F.3d at 1367-68). In each instance, the patent claims included computer-based limitations, but none were sufficient to limit the abstract idea to a new or useful device or application. *See Bancorp*, 687 F.3d at 1279 (finding computer-based limitations insignificant and claims otherwise directed to nothing more than abstract idea); *Fort Props.*, 671 F.3d at 1322-23 (holding that claims' computer limitations and requirement that method steps involve real property, deeds, and contracts were not

significant enough to remove them from realm of abstract idea); *Dealertrack*, 674 F.3d at 1333

(computer-aided limitations did not play a significant part in permitting the claimed method to be

performed and thus is no less abstract that the idea of a clearinghouse itself); *Cybersource*, 654

F.3d at 1370-71 (method steps could be performed entirely in human mind despite Internet-based

limitations).

Walker Digital's patent claims fit squarely within this set of precedent.  The steps of the

patent claims merely set forth the general process of making purchases from a remote seller,

generating and exchanging information identifying those purchases, and paying for those

purchases at a local store.  *See e.g.* '582 patent, claim 25.  Nothing in the claims sufficiently

limits this abstract idea to a patent-eligible application.

### A.   <u>The '582 Patent Claims Are Not Patent Eligible Under the "Machine-or-Transformation" Test</u>

As a preliminary matter, the '582 patent claims fail the "machine-or-transformation" test.

They do not transformation anything; nor are they tied to any particular machine.

### 1.   The '582 Patent Claims Do Not Effect Any Transformation

The steps of the '582 patent claims do not result in the transformation of something from

one state to another.  At most, they generate, store, and receive data regarding purchases.  *See*

*e.g.*, '582 patent, claims 1, 8, 25, and 41 (reciting "generating a code," "receiving a code,"

"transmitting a code," "generating payment data," "transmitting data," or "receiving payment

data").  This type of data manipulation, however, is not sufficient to meet the "transformation"

prong of the "machine-or-transformation" test.  *Bancorp*, 687 F.3d at 1273 (affirming district

court's finding that claims directed to managing and calculating the value of life insurance

policies "do not effect a transformation, as they do not transform the raw data into anything other

than more data and are not representations of any physically existing objects") (citation omitted);

*Cybersource*, 654 F.3d at 1370 ("the mere collection and organization of data . . . is insufficient to meet the transformation prong of the test").

Another judge in this District has recently confirmed that the mere transmission of data like that claimed in the '542 patent does not constitute a "transformation." In *CyberFone*, Judge Robinson rejected the argument that claims directed to capturing data, organizing the data into different data subsets, and sending the data to different destinations effectively transformed data and data storage devices. 2012 U.S. Dist. LEXIS 115740 at *15-17. The court noted that "no transformation can be said to have occurred . . . where the data is organized into data subsets" and a "storage device is not transformed into a 'different state or thing' by the mere receipt of additional electronic data." *Id.* at *16-17.

Accordingly, the steps of generating, transmitting, and receiving data in the '582 patent claims do not transform data into anything other than more (and likely the same) data, and cannot meet the transformation prong of the "machine-or-transformation" test.

### 2.   The '582 Patent Claims Are Not Tied to Any Machine

The '582 patent claims are not tied to any machine or apparatus. Of particular note is the fact that the '582 patent method claims make no mention of any machine at all. *See e.g.* '582 patent, claims 1, 8, 25, and 41. Only the corresponding apparatus (claims 44, 46, and 57), means-plus-function (claims 69-71), and computer readable medium (claims 72-73) claims make any reference to the use of computers. Simply re-drafting method claims as system or medium claims does not save the claims from a patent eligibility analysis, however. *See Bancorp*, 687 F.3d at 1276-77 (finding it proper to subject system and medium claims to a § 101 analysis, including the machine-or-transformation test, where they are equivalent to the method claims); *Cybersource*, 654 F.3d at 1374 (rejecting notion that computer-readable medium claim cannot constitute an unpatentable abstract idea).

10

Thus, to be patent eligible, even the apparatus and medium claims must do more than just recite components such as a processor, memory, or computer-readable medium to satisfy the machine prong of the "machine-or-transformation" test. *OIP*, 2012 U.S. Dist. LEXIS 129396 at *46 ("merely identifying general 'machine elements' does not satisfy the MOTT; were that so, virtually any use of a devices beyond the human body . . . would satisfy the test"). The claimed machine components "must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp*, 687 F.3d at 1278.

Here, the recited computers do nothing more than what could be done by a person. For example, claim 57 recites a processor operative to perform the same steps as the corresponding method claim (claims 25):

- receive data relating to a purchase of goods;
- generate a code and purchase price of the goods;
- transmit the code and price to the customer
- generate order data for use by a local seller in receiving payment
- receive data confirming payment
- generate data to initiate shipment of goods
- receiving payment from the local seller

'582 patent, claim 57. A person can accomplish each of these steps manually by writing down a product identifier and price and verbally communicating that information to a local seller, for example. There is nothing unique or integral about the role of the computer in the '582 claims. The "machines" required by the '582 patent claims perform only the most basic function of receiving and transmitting data. *See e.g.* '582 patent at cols. 5:46-48; col. 6:14-17; col. 7:21-23 (citing use of conventional systems). That is not enough to meet the standard of patent eligibility set by the machine-or-transformation test. *See Bancorp*, 687 F.3d at 1278 (finding that the computer required by some of Bancorp's claims for managing and calculating the value of life insurance is employed only for its most basic function, the performance of repetitive

calculations, and as such does not impose meaningful limits on the scope of claims); *Glory Licensing*, 2011 U.S. Dist. LEXIS 51888 at *9 (finding that mere reference to any conventional computer programmed to perform the claimed functions without any more specific limitation was insufficient to satisfy machine prong).

**B.**     **The '582 Patent Claims Are Directed to an Unpatentable Abstract Idea**

  **1.**     **The '582 Patent Claims Do Not Contain Any Limitations Restricting Them to a Patent-Eligible Application of an Abstract Idea**

Beyond failing to satisfy the machine-or-transformation test, at their core, the '582 patent claims are directed to an abstract concept:  paying for goods purchased from a remote seller at a local point-of-sale retailer.  To transform the abstract idea of paying for remote purchases locally into a patent-eligible application of that concept, the '582 patent claims must apply that concept to a new and useful end.  *See Mayo*, 132 S. Ct. at 1294, *citing Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948).  The claims must "contain other elements or a combination of elements, sometimes referred to as an 'inventive concept,' sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself."  *Mayo*, 132 S. Ct. at 1294 (citations omitted).

The limitations of the '582 patent claims all fall within one of the four main steps describing the abstract concept of paying for a purchase made from a remote seller at a local point-of-sale store:  (1) making a purchase from a remote seller; (2) providing the customer and point-of-sale retailer with information identifying the remote purchase; (3) identifying the remote purchase at the point-of-sale location, and (4) paying for the remote purchase at the point-of-sale location to complete the purchase transaction.

| Steps of Abstract Concept of Paying Locally for a Remote Purchase | Claim 8 (point-of-sale retailer) | Claim 25 (remote seller) | Claim 41 (customer) |
|---|---|---|---|
| | "A method of processing a payment for a purchase of goods, comprising the steps of:" | "A method for a remote seller to process a payment for the sale of goods, comprising:" | "A method of submitting a payment for a purchase of goods, comprising the steps of:" |
| 1. Making a purchase from a remote seller | | "receiving a remote order for a purchase of goods from a customer" | "transmitting an order of goods to a remote merchant" |
| 2. Providing the customer and point-of-sale retailer with information identifying the remote purchase | | "generating a code and a purchase price for said remote order; transmitting said code and said purchase price to the customer; providing order data for use by a point-of-sale system of a local seller in receiving payment for said remote order" | "receiving a code and a purchase price for said order form said remote merchant" |
| 3. Identifying the remote purchase at the point-of-sale location | "receiving at a point-of-sale system a code relating to a purchase of goods; determining if said code relates to a local order or to a remote order from a seller; if said code relates to a remote order, then determining a price for said remote order," | | "providing at least one of said code and said purchase price for use by a point-of-sale system of a local seller in processing a payment for said order" |
| 4. Paying for the remote purchase at the | "receiving a payment for said remote order, | "receiving payment data confirming said | "submitting said payment to said local |

13

| point-of-sale location to complete the purchase transaction | and<br><br>transmitting to said remote seller data indicating that said payment has been received for said remote order." | payment has been received at said point-of-sale system of said local seller<br><br>initiating, responsive to said payment data, a shipment of said goods; and<br><br>receiving payment for said remote order from said local seller." | seller at said point-of-sale system; and<br><br>receiving said goods from said remote merchant." |
|---|---|---|---|

As set forth in the above table, other than reciting the general concept of completing a purchase from a remote seller through payment at a local retailer, there are no meaningful limits placed on how orders are made or processed, what codes are used, or how payment is received or processed.  In fact, the '582 patent explicitly acknowledges that its patent covers use of any conventional system for order taking ('582 patent at col. 10:19-21), any code that may identify the purchase (*id*. at cols. 11:27-30, 46-49, 56-57), and conventional and commercially available systems (*id*. at cols. 5:46-48; 6:14-17; 7:21-23).  Indeed, the core claim limitations can be performed entirely through verbal communication between individuals or use of already established conventional systems.  Without any limitations restricting the '582 patent claims to a specific application, they monopolize the entire concept of local payment for remote purchases and thus, are invalid for claiming unpatentable subject matter.

### 2.    The Inclusion of Conventional Steps that May Tie the Claims to the Physical World Is Insufficient to Render the Claims Patent Eligible

It is true that performing the steps of the '582 patent claims does require more than mental steps.  Certainly the '582 patent claims require the exchange of information, and in some cases even exchange of physical goods, between entities.  It also requires that payment for the

remotely purchased goods be effected in some manner.  The fact that the claim limitations are tied in some way to the physical world is not enough, however, to remove the patent from the realm of unpatentable abstract ideas.

In *Fort Properties,* the patent holder argued that its claims directed to a method of avoiding tax liability for property exchanges was not an abstract idea because it required steps to be taken with respect to deeds, contracts, and real property.  671 F.3d at 1322.  The Federal Circuit rejected this argument and found that an "abstract concept cannot be transformed into patentable subject matter merely because of connections to the physical world through deeds, contracts, and real property."  *Id.*; *see also In re Schrader,* 22 F.3d 290, 291 (Fed. Cir. 1994) (finding the physical effect or result of entering of binds in a record, a step that could have been accomplished simply by writing the bids on a piece of paper or chalkboard, was insufficient to impart patentability).  As in *Fort Properties*, here, the claims as a whole do not impart physical activity sufficient to limit the abstract idea in such a way to constitute patentable subject matter. The exchange of information regarding the purchase and effecting payment are simply logical steps that must be taken as part of the general concept of paying for a remote purchase at a separate local point-of-sale location.

Nor does the inclusion of additional limitations (included in both independent and dependent claims) such as shipping of the goods, receipt of payment, or use of barcodes sufficiently limit the scope of the claims.  As the Supreme Court has noted, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable."  *Mayo*, 132 S. Ct. at 1300.

### 3. Reciting Use of a Conventional Computer Does Not Make an Abstract Idea Patentable

Finally, the inclusion of apparatus, means-plus-function, and computer-readable medium claims that tie the abstract idea to a computer or program code does not transform the "invention" into patent eligible matter.

"Simply adding a 'computer-aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible." *Dealertrack,* 674 F.3d at 1333; *Cybersource*, 654 F.3d at 1375 ("to impart patent-eligibility to an otherwise unpatentable process under the theory that the process is linked to a machine, the use of the machine 'must impose meaningful limits on the claim's scope'") (citations omitted). In *Dealertrack,* the Federal Circuit found that inclusion of a computer limitation was no less abstract than the concept of a clearinghouse set forth in the claims, particularly where the claims did not specify how the computer hardware and database are specially programmed to perform the steps of the patent. *Id.* The fact that a computer might act "as an obvious mechanism for permitting a solution to be achieved more quickly – *i.e.*, through the utilization of a computer for performing calculations" – was not enough to make the abstract claim patent-eligible. *Id.* The Court went on to note that the fact that certain algorithms were disclosed in the specification did not change the outcome. *Id.* at 1334.

Likewise, here, the '582 patent's computer limitations do not specify how the recited "processor" in the apparatus claims is specially programmed. In fact, the patent states that conventional computer systems can be used to implement the apparatus and means-plus function claims. *See e.g.* '582 patent at cols. 5:46-48; 6:14-17; 7:21-23. Thus, as in *Dealertrack*, use of computers is not core to the invention, but simply a mechanism for performing the steps more efficiently. That does not impose any significant limit on use of the abstract idea.

16

The '582 patent also does not impose any limitations on the "program code" recited in the computer medium claims.  Indeed, the "algorithm" disclosed in the '582 patent specification is not specifically incorporated in the claims, and furthermore, does not set forth any specific approach beyond the basic concept of paying for a remote purchase at a local store.  *See* '582 patent, Figs. 5A-7B.

Because there are no meaningful restrictions placed on the '582 patent claims to restrict it to an application of an abstract idea, the patent is invalid for claiming unpatentable subject matter.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, defendants PayNearMe, Inc., 7-Eleven, Inc. and Amazon.com, Inc. respectfully request that this Court dismiss plaintiff Walker Digital, LLC's complaint for failure to state a claim based on the unpatentability of the asserted patent.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

*Of counsel:*

J. David Hadden
Carolyn Chang
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500

*Counsel for PayNearMe, Inc. and
7-Eleven, Inc.*

Eliza V. Bechtold
Klaus H. Hamm
Salumeh R. Loesch
Jeffery S. Love
Kristen L. Reichenbach
Todd M. Siegel
Carla Todenhagen
Philip Warrick
Garth A. Winn
Klarquist Sparkman, LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
Telephone:   (503) 595-5300

*Counsel for Amazon.com, Inc.*

Dated: March 11, 2013
1097857 / 39907

By:   */s/ Richard L. Horwitz*
          Richard L. Horwitz (#2246)
          David E. Moore (#3983)
          Bindu A. Palapura (#5370)
          Hercules Plaza, 6th Floor
          1313 N. Market Street
          Wilmington, DE  19801
          Tel:  (302) 984-6000
          rhorwitz@potteranderson.com
          dmoore@potteranderson.com
          bpalapura@potteranderson.com

*Attorneys for Defendants PayNearMe, Inc.,
   7-Eleven, Inc., and Amazon.com, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on March 11, 2013, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on March 11, 2013, the attached document was Electronically Mailed to the following person(s):

Stamatios Stamoulis
Richard C. Weinblatt
Stamoulis & Weinblatt LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
stamoulis@swdelaw.com
weinblatt@swdelaw.com

By: */s/ Richard L. Horwitz*
Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

1093348/39907/39922